1  Samy S. Henein, Esq. (#171356)
   SUPPA, TRUCCHI & HENEIN, LLP.
2  3055 India Street
   San Diego, CA  92103-6013
3  Telephone No. (619) 297-7330

4  Attorneys for DIANA KISER and MILAN
   KISER INDIVIDUALLY AND AS
5  TRUSTEES OF THE MILAN AND DIANA
   KISER REVOCABLE TRUST DATED
6  AUGUST 19, 2003

7

8

9
                     **UNITED STATES DISTRICT COURT**
10
                     **SOUTHERN DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| Chris Langer, | Case No.: 18-CV0195 BEN NLS |
| Plaintiff, | |
| v. | **DEFENDANTS AND CROSS-COMPLAINANTS MILAN AND DIANA KISER'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE #1** |
| Milan Kiser, in individual and representative capacity as trustee of the Milan and Diana Kiser Revocable Trust dated August 19, 2003; Diana Kiser, in individual and representative capacity as trustee of the Milan and Diana Kiser Revocable Trust dated August 19, 2003;Frank P. Rofail; David Matthew Taylor; and Does 1-10, | |
| | Date: April 6, 2020 |
| | Time: 10:00 a.m. |
| | Ctrm: 5A |
| Defendants. | |
| | Hon. Roger T. Benitez |
| _____ | |
| Milan and Diana Kiser as Trustees of the Milan and Diana Kiser Revocable Trust dated August 19, 2003, | |
| Counterclaimaints, | |
| v. | |
| Chris Langer; and Roes 1-20, | |
| Counterclaim Defendants. | |
| _____ | |

28  ////

---

**Opposition to Motion in Limine No. 1**

Defendants and Cross-Complainants MILAN KISER and DIANA KISER (Defendants) respectfully submit the following Opposition to Plaintiff CHRIS LANGER'S (Plaintiff) Motion in Limine No. 1:

# I

# INTRODUCTION

Plaintiff is seeking injunctive relief, therefore, a critical issue in this case is whether Plaintiff actually has a genuine intent to return to the property. Whether or not Plaintiff's testimony on this issue is credible is a question of fact for the jury. The fact that the court's have allowed "tester" standing does not mean that Plaintiff cannot be impeached when he testifies he has a genuine intent to return. The fact that he testified that he visited, and sued, at least 631 other properties in Los Angeles, all while living in San Diego, certainly belies that claim. Plaintiff has placed the question of his intent to return squarely at issue. Plaintiff wishes to have the false aura of credibility on a material issue by precluding Defendants from impeaching his testimony based on the facts and his testimony under penalty of perjury. By precluding Defendants from questioning Plaintiff about his claims of an intent to return to the other 910 establishments he has sued, to which he testified at his deposition, that would mean that Plaintiff's testimony would have the aura of credibility, while in reality the evidence suggests that to be totally false.

The cases cited by Plaintiff do not preclude a Defendant from using prior acts evidence, i.e prior lawsuits, for impeachment purposes. The cases all involve a different procedural posture, i.e 12(b)(6) or summary judgment motions, and none involved the question of whether or not prior lawsuits could be used for impeachment in an ADA case. To the contrary, courts do in fact consider prior suits in evaluating a plaintiff's stated intent to return to a particular establishment.

# II

# STATEMENT OF FACTS

Plaintiff filed the present action on January 29, 2018. The complaint is "For Damages And Injunctive Relief For Violations Of: American's With Disabilities Act; Unruh Civil

---

Rights Act". [Doc #1]

Plaintiff alleges in his first cause of action for violation of the Americans With Disabilities Act as follows:

- "Plaintiff is and has been deterred from returning and patronizing the 1Stop Smoke Shop and Gour Maine Lobster because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the 1 Stop Smoke Shop and Gour Maine Lobster as a customer once the barriers are removed. [Complaint ¶41]
- "Given its location and options, plaintiff will continue to desire to patronize the 1 Stop Smoke Shop and Gour Maine Lobster but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers." [Complaint ¶58]

The second cause of action is violation of the Unruh Civil Rights Act. There, Plaintiff incorporates the allegations in the first cause of action and also alleges as follows:

- "[B]ecause the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code §55.56(a)-(c).) [Complaint ¶¶59, 61]

In Plaintiff's motion for summary judgment, Plaintiff filed a declaration stating "I live about 10 minutes away from the Smoke Shop and the Lobster Shop. Therefore, they are convenient places for me to shop. I would like the ability to safely and independently park and access the Businesses. Once the violations are removed, I plan to visit the Businesses on a regular basis whenever I am in the area." [Langer MSJ Dec ¶15-17]

At his deposition which took place on September 14, 2018, Plaintiff testified that he had at that point filed about 1,000 ADA cases, that in every case he filed, he alleges he intends to return to those locations, that out of all of his cases, he went to trial 20 times or less, and almost all of the others had settled. Plaintiff also testified that he intended to return all of the locations he had sued in Los Angeles although he has always resided in San Diego, more than 120 miles away. Plaintiff's testimony was as follows:

---

**Opposition to Motion in Limine No. 1**　　2

```
 3    Q.  Is that your purpose in going to these
 4    businesses, to find ADA violations?
 5    A.  No.
 6    Q.  So you're genuinely going to these businesses
 7    because you want to patronize them all?
 8    A.  Yes.
 9    Q.  And the same thing with the 631 businesses in
10    L.A. that you sued, you just happened to go there and
11    find handicap access problems?
12    A.  Yes.

      Q.  Did you used to live in the Los Angeles area?
10    A.  Excuse me?
11    Q.  Did you used to live in the Los Angeles area?
12    A.  No.
13    Q.  So all of those 631 cases that you filed in
14    the Central District were against businesses that you
15    happened to be visiting while you were living in
16    San Diego; is that right?
17    A.  Yes.
18    Q.  In all of those 631 cases, did you actually
19    intend to patronize those businesses after they
20    corrected whatever the alleged ADA violations were?
21    A.  Yes.
22    Q.  So you intended -- so you went to a business
23    up in L.A., you found that there were problems with that
24    business, you sued them, and you intended to go back to
25    those businesses to patronize them when you were living
 1    in San Diego?
 2    A.  Yes.
```

[page 114-115]

```
 7    Q.  I'm asking you -- I left off at the end "is
 8    that correct."  So let me ask you another question.
 9        So between your lawsuits in the Southern
10    District of California and the Central District of
11    California, you've filed 900- -- some 950 cases
12    approximately.  Okay?
13        And what I'm trying to understand is, did you
14    intend to patronize all of those 950 different
15    businesses that you sued after they corrected their
16    violations?
17    A.  Yes.
18    Q.  In each of those cases, that's what you
19    alleged, right?
13
      Q.  How many times have you gone to trial?
19    A.  Going to trial, maybe 20 or 30 times maybe.
20    Maybe less.  I think it's less, but -- maybe 20 times.
21    20.  Maybe 20 trials.
      Q.  So we were talking about all the other
25    lawsuits that you filed, and you testified that you went
 1    to trial about 20 times.  Of those 20, you may have lost
 2    five cases.
 3        Did all the other cases get settled?
```

```
 4    A.   Yes.
 5    Q.   And did you receive monetary compensation for
 6  all of those other cases?
 7    A.   I'm not sure about all of them, but most of
 8  them, yes.
 9    Q.   So you make a lot of money on these cases,
10  don't you?
11    A.   I make some money, yes.
12    Q.   How much money have you made on these 900-plus
13  cases that you filed?
```

Plaintiff now seeks to testify about his professed intent to return but wishes to not be cross examined about the fact that he made the same exact allegations in now more than 1,500 other cases (and counting). Plaintiff contends such evidence should be excluded on the grounds of relevance, undue consumption of time and undue prejudice. Plaintiff's motion should be denied for the reasons set forth below.

## III

## DISCUSSION

**A.   PLAINTIFF'S PAST LITIGATION HISTORY IS ADMISSIBLE FOR PURPOSES OF IMPEACHMENT.**

Plaintiff's past litigation history and in particular the prior allegations of an intent to return in over 1,500 other cases *is* admissible for purposes of impeachment.

The starting point for the Court's analysis is Rule 404(b). See <u>Batiste-Davis v. Lincare, Inc.</u>, 526 F.3d 377, 380 (8th Cir. 2008) ("prior acts include prior lawsuits."). Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is nonetheless admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Id. To admit evidence of prior acts, it must: (1) tend to prove a material point in issue; (2) not be too remote in time; (3) be proven with evidence sufficient to show the act was committed and; (4) if admitted to prove intent, must be similar to the offense charged. <u>United States v. Beckman</u>, 298 F.3d 788, 794 (9th Cir. 2002). If evidence satisfies Rule 404(b), "the court must then decide whether the probative value is

---

**Opposition to Motion in Limine No. 1**                                                                 4

substantially outweighed by the prejudicial impact under Rule 403." United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002). In analyzing whether to the admit Rule 404(b) evidence, the Court is mindful that the rule is "a rule of inclusion—not exclusion." United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008).

As a general matter, prior lawsuits are inadmissible to show that the plaintiff is litigious. See Henderson v. Peterson, No. C 07-2838 SBA, 2011 U.S. Dist. LEXIS 76799, 2011 WL 2838169,(N.D. Cal. July 15, 2011) ("evidence of Plaintiff's litigiousness is inadmissible character evidence."). *Nonetheless, such evidence is admissible for other purposes, such as impeachment*. United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992) (noting that "[Rule 404(b)] does not proscribe the use of other act evidence as an impeachment tool during cross-examination."). Moreover, Federal Rule of Evidence 608(b) specifically contemplates inquiries into prior behavior in order to challenge a witness's credibility. Evidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness. Varhol v. National R.R. Passenger Corp., 909 F.2d 1557, 1567 (7th Cir. 1990); see also United States v. Amahia, 825 F.2d 177, 180-81 (8th Cir. 1987).

Plaintiff cites several cases for the proposition that Plaintiff's prior lawsuits are irrelevant, however, these cases do *not* support Plaintiff's arguments. For example, Plaintiff cites Daniels v. Arcade, L.P., 477 Fed.Appx. 125, 2012 WL 1406299 (4th Cir. 2012) in which the court stated "The right to sue and defend in the courts… is one of the highest and most essential privileges of citizenship… [and] is granted and protected by the Federal Constitution." [Citation omitted.]". *But* the court went on to state "*Absent a determination that [the plaintiff] has abused those privileges*, we will not hold his past participation in the judicial process against him. Accordingly, we conclude that [the plaintiff's] litigation history is not relevant to this case." [Emphasis Added]. Thus, *Daniels* actually held that prior lawsuits *are* relevant if there is evidence that Plaintiff has abused those privileges, which is the case here. Furthermore, the court in *Daniels* was reviewing a motion to dismiss, where credibility is not an issue, which is why it deemed the prior litigation history was irrelevant. The *Daniels* court stated "Although we agree with the district court that Daniels was required to state a

---

**Opposition to Motion in Limine No. 1**     **5**

plausible allegation that there is a likelihood that he will suffer future harm, we disagree with the district court's conclusion that Daniels' allegations are insufficient. Daniels alleged that he "intends to continue to visit the [Market] in the future for his shopping needs." We must accept this allegation as true for purposes of the motion to dismiss, and we deem the allegation plausible because Daniels resides in relatively close proximity to the Market." Plaintiffs prior litigation history goes to the issue of his credibility, which is not a factor on a motion to dismiss, but it is most certainly an issue for trial. The suggestion that *Daniels* found that prior ADA lawsuits are irrelevant is misleading.

Plaintiff also relies on Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr., 867 F.3d 1093, 1100 (9th Cir. 2017) ("CREEC") to argue that the question of his intent to return is irrelevant (and unduly prejudicial) since the Ninth Circuit said that Plaintiffs' status as an ADA tester does not deprive him of standing. This is not what the CREEC case says. The issues in CREEC, in the context of a class certification motion, were (1) whether a plaintiff may rely on the "deterrent effect doctrine" to establish constitutional standing under the ADA where he lacks firsthand knowledge that an establishment is not in ADA compliance; and (2) whether a plaintiff has constitutional standing where his only motivation for visiting a facility is to test it for ADA compliance. CREEC, 867 F.3d at 1096. The CREEC court did ***not*** hold that the issue of a Plaintiff's intent to return is irrelevant, it just held that a Plaintiff has standing even though his only motivation is to test a facility for ADA compliance. CREEC does not stand for the proposition that prior lawsuits cannot be used to impeach a plaintiff on the issue the intent to return, nor on the issue of standing.

Plaintiff also cites footnote 3 in Wilson v. Murillo, 163 Cal.App.4th 1124, 1128, (2008), in which the court stated, on a motion for summary judgment, that numerosity alone is insufficient to show that Plaintiff's lawsuits are frivolous or harassing. However, this doesn't mean that prior ADA lawsuits are irrelevant, only that numerosity alone is insufficient.

Furthermore, numerous courts have held that where prior claims are strikingly similar, and the probability of their recurrence is negligible, the evidence may be sufficiently probative even absent a specific showing of fraud. McCormick on Evidence § 196 (7th ed.). E.g.,

**Opposition to Motion in Limine No. 1** 6

1  Westfield Ins. Co. v. Harris, 134 F.3d 608 (4th Cir. 1998) (error to exclude evidence of
2  plaintiff's six prior house-fire claims and one prior truck-fire claim); Yates v. Sweet Potato
3  Enterprises, Inc., No. C 11-01950 SBA, 2013 U.S. Dist. LEXIS 109374, 2013 WL 4067783,
4  at *3 (N.D. Cal. Aug. 1, 2013) (allowing admission of evidence of plaintiff's "hundreds" of
5  other actions asserting similar boilerplate allegations to impeach credibility).
6        In the ADA context, courts in fact do consider prior suits in evaluating a plaintiff's
7  stated intent to return to a particular establishment.  Plaintiff's filing of well over a 1,000
8  disability lawsuits in which he alleges identical injuries bears directly upon his credibility. See
9  Otto v. Commerce St. Capital, No. 12-2472, 2013 U.S. Dist. LEXIS 75572, 2013 WL
10 2357623, (E.D. Pa. May 29, 2013) (finding that evidence of plaintiffs' prior lawsuits, which
11 made "nearly identical damage claims," was admissible to challenge credibility of their
12 damage claims); Tomaino v. O'Brien, 315 F.App'x 359, 361, 2009 WL 690209 (2d Cir. 2009)
13 (upholding admission of evidence concerning plaintiff's five prior lawsuits on the ground that
14 a jury could infer that plaintiff had made "strikingly similar claims [and] that his testimony in
15 support of a sixth such suit was not credible."). See also Barbee v. Southeastern Pa. Transp.
16 Auth., 323 Fed. Appx. 159, 162, 2009 WL 868018 (3rd Cir. 2009) (holding that evidence of
17 the plaintiff's involvement in at least 24 prior civil suits was properly admitted for
18 impeachment purposes.)
19       In D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1040 (9th Cir. 2008),
20 the plaintiff traveled to Santa Barbara on a work trip. Id. at 1034. After encountering access
21 barriers during her stay at the Best Western Encina, she brought suit against the hotel. Id.  In
22 addition to the suit against this particular hotel, the plaintiff had filed sixty prior ADA suits.
23 Id. at 1040. The district court found D'Lil's number of prior ADA suits raised questions as to
24 whether D'Lil truly intended to return to this Best Western.  However, the Ninth Circuit found
25 that the plaintiff's credibility in this case was intact because she "gave detailed reasons as to
26 why she would prefer to stay at the Best Western Encina during her regular visits to Santa
27 Barbara." Id. at 1039.  Thus, the Ninth Circuit did not hold that prior ADA lawsuits were
28 inadmissible, only that prior lawsuits alone are insufficient to deny an ADA Plaintiff standing.

_____

**Opposition to Motion in Limine No. 1**       7

Plaintiff has filed well over 1,500 ADA cases. As of this date, Plaintiff has filed 438 cases in the Southern District of California, 910 cases in the Central District of California, and approximately 300 cases in San Diego Superior Court. Plaintiff often files multiple lawsuits a day. The following seven cases are his most recent lawsuits, all filed on February 28, 2020: (1) 3:20-cv-00373-GPC-JLB Langer v. S & G Zavaro Inc. et al; (2) 3:20-cv-00374-BEN-KSC Langer v. Amerigas Propane, L.P. et al; (3) 3:20-cv-00375-BEN-JLB Langer v. Kianarman LLC et al; (4) 3:20-cv-00376-CAB-WVG Langer v. Stromesa Court LLC et al; (4) 3:20-cv-00377-W-AGS Langer v. Milan Real Estate Investments, LLC et al; (5) 3:20-cv-00378-DMS-BGS Langer v. Pomo LLC et al; (6) 3:20-cv-00379-AJB-LL Langer v. Sepin et al. In nearly all of his 1,500 plus lawsuits, Plaintiff alleges that the parking is not ADA compliant and that he intends to return to the subject premises when they are complaint. Plaintiff always seeks injunctive relief, statutory damages and attorneys fees. Plaintiff here likewise alleges that he intends to return to the subject premises when the violations have been removed.

Thus, Plaintiff has not just filed numerous other lawsuits, they are all virtually identical and he always alleges that he intends to return to the businesses that he sued. If Plaintiff is going to testify that he intends to return to the Smoke Shop and Lobster Shop, the question of whether that testimony is truthful is certainly fair game, and Plaintiff's alleged intent to return does not appear genuine. Plaintiff's litigation history raises serious credibility questions about his professed intent to return. Given the high number of suits and identical allegations, it is highly implausible that Plaintiff sincerely intends to return to every place he sues. Defendants should certainly be able to use the fact that Plaintiff alleges an intent to return to more than 1,500 other locations, without actually returning, to challenge his assertion about his professed intention to return to their property.

**B.    EVIDENCE OF PLAINTIFF'S PRIOR LITIGATION HISTORY IS NOT UNDULY PREJUDICIAL**

Plaintiff contends that challenging his allegation that he intends to return by asking him about the 1,500 plus other times he made the same allegation is unduly prejudicial. Actually,

---

**Opposition to Motion in Limine No. 1**                                                                                        **8**

it would be prejudicial to allow Plaintiff to profess an intent to return to the property, when nothing could be further from the truth.

As used in Rule 403, "unfair prejudice" is not to be equated with testimony simply adverse to opposing party, but prejudice must be "unfair." Dollar v. Long Mfg., N. C., Inc., 561 F.2d 613, 24 Fed. R. Serv. 2d (Callaghan) 408, 2 Fed. R. Evid. Serv. (CBC) 760 (5th Cir.), reh'g denied, 565 F.2d 163 (5th Cir. 1977), reh'g denied, 565 F.2d 163 (5th Cir. 1977), cert. denied, 435 U.S. 996, 98 S. Ct. 1648, 56 L. Ed. 2d 85 (1978).

Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. United States v. McRae, 593 F.2d 700, 4 Fed. R. Evid. Serv. (CBC) 503 (5th Cir.), reh'g denied, 597 F.2d 283 (5th Cir. 1979), cert. denied, 444 U.S. 862, 100 S. Ct. 128, 62 L. Ed. 2d 83 (1979).

"No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. "People v. Gray, supra, 158 Cal.App.4th 635, at p. 641 (Ibid.)(2007).

Plaintiff's credibility is clearly an issue. Courts have regularly raised credibility issues in ADA litigation involving serial plaintiffs. Harris, 472 F. Supp. 2d at 1208 ("The Court further finds the large number of Title III claims brought by Plaintiff raises concerns about credibility."). The issue here is not whether Plaintiff is a serial ADA tester, but whether he misrepresented the purpose of his visit to the Shopping Center. Rocca v. DEN 109 LP, Nos. 15-56407, 15-56643, 684 Fed. Appx. 667, 2017 WL 1089550, at *1 (9th Cir. Mar. 23, 2017) ("The district court did not find [plaintiff] not credible because he was an ADA 'tester,' which might have been legal error; rather, the district court found [plaintiff] not credible because he misrepresented the purpose of his visit.").

Rule 404(b) does not proscribe the use of other act evidence as an impeachment tool during cross examination.. Here, Plaintiff's filing of well over a thousand disability lawsuits in which he alleges identical injuries bears directly upon his credibility. The evidence of the prior lawsuits should be admitted for purposes of impeachment.  The probative value of the prior acts evidence outweighs any undue prejudicial, if any.

**Opposition to Motion in Limine No. 1** 9

**C.     UNDUE CONSUMPTION OF TIME.**

Plaintiff contends that Defendants should not be allowed to impeach his testimony because then he will have to relitigate each of the cases raised by Defendants to show that the claims were meritorious and negate any inference of impropriety.  Plaintiff then argues that this excessive consumption of time is entirely not worth the small probative value the evidence may or may not have.

Plaintiff's premise is incorrect.  The fact that Plaintiff filed 1,500 plus prior lawsuits, always alleging an intent to return, is highly probative of his credibility on the issue of whether he intends to return to the subject premises.  Also, just because the evidence against Plaintiff is overwhelming doesn't mean it should be excluded.  Moreover, it is not necessary for Plaintiff to relitigate all of his prior cases to rebut the inference he is not being truthful.  Plaintiff can simply present evidence to show which of the premises he actually returned to.  Our legal system places primary reliance for the ascertainment of truth on the "test of cross-examination." United States v. De Sisto, (2nd. Cir.) 329 F.2d 929, at 934 (1964).  If Plaintiff is going to testify he has an intent to return, Defendants should allowed to cross examine him to ascertain the truth of that testimony.

                                              Respectfully submitted,

                                              SUPPA, TRUCCHI & HENEIN, LLP

DATE: March 23, 2020                         By: /s/ Samy Henein
                                                              Samy Henein, Esq.
                                                              Attorneys for Counterclaimants