

FILED
OCT 1 6 2020
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER,<br><br>    Plaintiff,<br><br>v.<br><br>MILAN KISER, in individual and representative capacity as trustee of the Milan and Diana Kiser Revocable Trust dated August 19, 2003; DIANA KISER, in individual and representative capacity as trustee of the Milan and Diana Kiser Revocable Trust dated August 19, 2003,<br><br>    Defendants. | Case No.: 3:18-cv-00195-BEN-NLS<br><br>**ORDER DENYING PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE**<br><br>**[ECF Nos. 65, 66]** |

## I. INTRODUCTION

Plaintiff Chris Langer ("Plaintiff") brings this action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et. seq.* (the "ADA"), against Defendants Milan and Diana Kiser, as individuals and in their representative capacities as trustees of the Milan and Diana Kiser Revocable Trust dated August 19, 2003 (collectively, "Defendants") for discrimination by failing to provide full and equal access to the parking lot they own that Plaintiff was unable to access due to his disabilities. ECF No. 1.

Before the Court is Plaintiff's Motion *in Limine* No. 1 to Exclude Evidence of Plaintiff's Litigation History (the "Motion"). ECF No. 65. Defendant opposed Plaintiff's

Motion. ECF No. 66. Plaintiff did not file a reply brief.

The motions were submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES** Plaintiff's Motion.

## II. BACKGROUND

### A. Statement of Facts

Plaintiff Chris Langer ("Plaintiff"), is a paraplegic who uses a wheelchair for mobility. ECF No. 24-2 at 1:24. He has a disabled person parking placard and a "specially equipped van with a ramp that deploys out of the passenger side." ECF No. 1 at 2:6-9. On February 27, 2017, Plaintiff went to the 1 Stop Smoke Shop (the "Smoke Shop") and Gour Maine Lobster shop/Wallpaper store (the "Lobster Shop") "to shop at the Smoke Shop and to check for pricing at the Lobster Shop." ECF No. 24-1, Declaration of Chris Langer, at 1:27-2:1-2. Plaintiff asserts that he encountered barriers that prevented him from patronizing the businesses because there were no compliant handicap-accessible parking spaces. ECF No. 1 at 4:14-21. Due to the inaccessible condition of the parking lot, Plaintiff argues he was denied "full and equal access" to the property, which caused him "difficulty and frustration." ECF No. 1 at 5:18-19. Plaintiff states that he (1) lives "about 10 minutes away from the Smoke Shop and the Lobster Shop" (2) "would like the ability to safely and independently park and access the Businesses," and (3) plans to vists the business "on a regular basis whenever" he is in the area. ECF No. 24-1 at 2:4-12. Although Plaintiff states he would like to visit the Smoke Shop, *see id*, there is no evidence in the record that Plaintiff smokes.

Defendants are the trustees of the Milan and Diana Kiser Revocable Trust, which owns the mixed-use real property located at 3002 Barnett Ave., San Diego, California 92110 (the "Property"). ECF No. 25 at 3:8-11. The Property consists "of both residential and commercial units" and is surrounded by one parking lot on the East side (the "East Lot") and another parking lot on the West side (the "West Lot"). *Id.* at 3:10-11. Defendants lease the East Lot, which may only be accessed through gated entrances at

-2-

the front and back, to residential tenants. ECF No. 25 at 3:14-17. At both entrances to the East Lot, signs are posted stating, "OPEN PUBLIC PARKING PROHIBITED – NO TRESPASSING." *Id.* at 3:17-20. "The owners of the Smoke Shop and Lobster Shop each have a single parking space in the East lot, but for personal use only." *Id.* at 3:15-16. The West Lot, on the other hand, "is ***not*** leased to the 1 Stop Smoke Shop, rather it is leased to an auto repair shop," and "[t]here are no signs indicating that any of the spaces in the West lot are for either 1 Stop Smoke Shop or Gour Maine Lobster customers." ECF No. 25-1 at 3:6-9 (emphasis in original). The sign in the Smoke Shop window that says "PARKING" has an arrow pointing to the left of the store and "points to the West towards the alley or street parking on the next block." *Id.* at 3:18-19. Defendants allege that by attempting to park in the East Lot, a lot for Defendants' residential tenants, Plaintiff trespassed in violation of the signs at each entrance, prohibiting public parking. ECF No. 20 at 2.

### B. Procedural History

On January 29, 2018, Plaintiff filed a Complaint in federal court alleging violations of the ADA and Unruh Civil Rights Act. ECF No. 1 at ¶¶ 44–60. Plaintiff's complaint requests (1) "injunctive relief, compelling defendants to comply" with the ADA; (2) "[d]amages under the Unruh Civil Rights Act, which damages provide for actual damages and a statutory minimum of $4,000"; and (3) "[r]easonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52." ECF No. 1 at 11:8-17.

On March 23 and 26, 2018, Defendants filed answer to the complaint. *See* ECF Nos. 7, 8. On November 19, 2018, the Court entered an Order granting Defendants Motion for Leave to Amend Answer and Add First Counterclaim for Trespass. ECF No. 19. On November 21, 2018, Defendants filed their Amended Answer and Counterclaim. ECF No. 20. On November 12, 2019, Plaintiff filed an answer to the counterclaim against him. ECF No. 55.

On February 10, 2020, the Final Pretrial Conference for this case was held before

-3-

the Hon. Roger T. Benitez, and the Minute Order for this conference provided that (1) motions in limine must be filed by March 9, 2020 and (2) jury instructions must be filed by April 27, 2020. ECF No. 62.

On March 9, 2020, Plaintiff timely filed his Motion *in Limine* No. 1 to Exclude Plaintiff's Litigation History. ECF No. 65. On March 23, 2020, Defendants filed an opposition. ECF No. 66. Plaintiff has not filed a reply brief.

## III. <u>LEGAL STANDARD</u>

Rulings on motions in limine fall entirely within this Court's discretion. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984)). Evidence is excluded on a motion in limine only if the evidence is clearly inadmissible for any purpose. *Mathis v. Milgard Manufacturing, Inc.*, 2019 WL 482490, at *1 (S.D. Cal. 2019). If evidence is not clearly inadmissible, evidentiary rulings should be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context. *See Bensimon*, 172 F.3d at 1127 (recognizing that when ruling on a motion in limine, a trial court lacks access to all the facts from trial testimony). Denial of a motion in limine does not mean that the evidence contemplated by the motion will be admitted at trial. *Id.* Instead, denial means that the court cannot, or should not, determine whether the evidence in question should be excluded before trial. *Id.*; *see also McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) (rulings on motions in limine are subject to change when trial unfolds).

## IV. <u>DISCUSSION</u>

Plaintiff advances three primary arguments in his Motion. First, he argues that his litigation history is inadmissible, and as such, should be excluded. ECF No. 65-1 at 2:14-17. Second, he argues that any argument regarding tester standing should also be excluded as both irrelevant and creating a substantial danger of undue prejudice. *Id.* at 6:9-12. Third, Plaintiff argues that his litigation history is not an appropriate basis for questioning the sincerity of Plaintiff's intent to return. *Id.* at 9:1-2. Defendant responds

that (1) Plaintiff's litigation history is admissible for purposes of impeachment, ECF No. 66 at 4:12-15, (2) evidence of Plaintiff's prior litigation history is not unduly prejudicial, *id.* at 8:25-26, and (3) whether Plaintiff intends to return is "highly probative" of Plaintiff's credibility, and as such, merits any time it may take to cross-examine Plaintiff on that issue, *id.* at 10:7-16. The Court agrees that Plaintiff's litigation history should not be excluded from trial and may be admissible for purposes of impeachment.

"The Americans with Disabilities Act (ADA) was signed into law by President George H. W. Bush on July 26, 1990." H.R. REP. No. 115-539, at 6-7 (2018) (citing 42 U.S.C. § 12101, *et seq.*). Its purpose was "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Id.* Although enacted with the most laudable of purposes, the ADA has regrettably produced unintended consequences, namely, extortion suits.[1] In response to vexatious litigants'

---

[1] "During its relatively short existence, the ADA has attracted sharp criticism from judges, lawyers, and legal scholars as having been distorted by certain lawyers into a cynical money-making scheme." *See, e.g., Doran v. Del Taco, Inc.*, 373 F.Supp.2d 1028, 1030–31 (C.D. Cal. 2005) (denying the plaintiff's motion for attorneys' fees). "Enterprising plaintiffs and their attorneys have found a way to circumvent the will of Congress by seeking money damages while retaining federal jurisdiction." *Doran*, 373 F.Supp.2d at 1030. Due to the fact that "a violation of the ADA also frequently constitutes a violation of state law, plaintiffs can sue in federal court for injunctive relief under the ADA and add state law claims for money damages." *Id.* Although the opinion was ultimately vacated and remanded, the *Doran* opinion, in denying a plaintiff's motion for attorneys' fees, described the perversion of the ADA best:

> The ability to profit from ADA litigation has given rise to 'a cottage industry.' The scheme is simple: An unscrupulous law firm sends a disabled individual to as many businesses as possible in order to have him or her aggressively seek out all violations of the ADA. Then, rather than simply informing a business of the violations and attempting to remedy the matter through 'conciliation and voluntary compliance,' a lawsuit is filed, requesting damage awards that could put many of the targeted establishments out of business. Faced with costly litigation and a potentially drastic judgment against them, most

perversion of the ADA, on February 15, 2018, Congress even tried to pass the "ADA Education and Reform Act of 2017," which attempted to address perceived abuses of the ADA. ADA Education and Reform Act of 2017, H.R. 620, Committee of the Whole House, 115th Cong., Second Session, 1198-1200 (2018). Although it passed the House of Representatives a vote of 225-192, *see id*, it was received in the Senate on February 26, 2018, and has not been passed into law. 164 Cong. Rec. S1219-03, S1219 (2018). The House Report for this bill noted that "[t]he ADA has, at least for these serial plaintiffs, been changed from a remedial statute aimed at increasing accessibility into a way for lawyers to make money." H.R. REP. 115-539, LEGISLATIVE HISTORY OF THE ADA EDUCATION AND REFORM ACT OF 2017 (2018). "Businesses sued under the ADA . . . are almost uniformly willing to fix their properties without the expense and hassle of litigating in federal court." *Id*. Thus, "[h]aling them into court regardless of their willingness to comply voluntarily with the ADA solely to vest plaintiffs' attorneys with an entitlement to fees provides very little societal benefit." *Id*.

Here, Plaintiff admits he "is what the published case law calls a serial litigator." ECF No. 65-1 at 2:8. A search of Public Access to Court Electronic Records ("PACER") shows that since May 1, 2002, Chris Langer has been a plaintiff in 472 cases before the Southern District. In the Central District, Plaintiff has been a plaintiff in 1,013 cases since November 19, 2008. PACER shows a total of 1,498 cases in which the plaintiff is

---

businesses quickly settle.

...[T]he result of this scheme is that 'the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals).' Serial plaintiffs serve as 'professional pawn[s] in an ongoing scheme to bilk attorney's fees.' It is a 'type of shotgun litigation [that] undermines both the spirit and purpose of the ADA.'

*Doran*, 373 F.Supp.2d at 1030 (internal citations omitted).

-6-

Case #: 3:18-cv-00195-BEN-NLS

named "Chris Langer" throughout all courts on PACER. Accordingly, the Court takes judicial notice that Chris Langer is a plaintiff in 1,498 federal cases. *See* FED. R. EVID. 201(b)(1)-(2) (providing that at any stage of a proceeding, courts may take judicial notice of (1) facts not subject to reasonable dispute and "generally known within the trial court's territorial jurisdiction" and (2) adjudicative facts, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290, fn. 1 (9th Cir. 1996) (taking judicial notice of court records); *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 746 (8th Cir. 1996) (holding that the district court did not err by taking judicial notice of pleadings in earlier related proceedings). Defendants also note that Plaintiff has filed "approximately 300 cases in San Diego Superior Court." ECF No. 66 at 7:3.

As discussed below, this Court holds that evidence of Plaintiff's litigation history (1) is not inadmissible; (2) may be relevant to tester standing; and (3) is an appropriate basis for questioning the sincerity of Plaintiff's intent to return to Defendants' Property.

### A. Plaintiff's Litigation History Is Not Inadmissible.

Plaintiff argues that his litigation history is inadmissible because it (1) is irrelevant, (2) necessitates undue consumption of time, and (3) creates a substantial danger of undue prejudice. ECF No. 65-1 at 2:14-17. Defendant argues that Plaintiff's litigation history is admissible for purposes of impeachment. ECF No. 66 at 4:12-15. While the Court will not rule that the evidence is admissible, as Defendants must lay foundation for all evidence they seek to admit at trial, the Court will not issue a ruling excluding evidence of Plaintiff's litigation history from coming in at trial.

Relevant evidence is admissible unless the United States Constitution, a federal statute, the Rules of Evidence, or other rules prescribed by the Supreme Court of the United States provide otherwise. FED. R. EVID. 402. However, even where evidence is relevant, it may not be admissible. *Id.* Under Rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

First, and as analyzed below, Plaintiff's litigation history—especially the 1,013 cases filed in the Central District—are unquestionably relevant to Plaintiff's credibility with respect to the legitimacy of his intent to return to businesses, and therefore, his standing. While specific acts may not be used to prove conduct in conformity therewith (e.g., in this case, Defendants should not be allowed to show that because Plaintiff never returned to patronize businesses in other cases, he must not have intended to return in this lawsuit), they are permissible to prove motive and intent. FED. R. EVID. 404(b)(2). Here, the Court believes the trier of fact may need to consider Plaintiff's litigation history when evaluating Plaintiff's motive and intent in filing this lawsuit. Second, the Court rejects Plaintiff's arguments that the probative value of introducing his litigation history is (1) substantially outweighed by the consumption of time or (2) unduly prejudicial to Plaintiff—especially given Plaintiff himself admits to being a serial litigator.

### 1. *Plaintiff's Litigation History is Relevant.*

Plaintiff argues his litigation history is not relevant to the current lawsuit, and thus, should be excluded. ECF No. 65-1 at 3:1-2. Defendant reiterates that Plaintiff's litigation history is admissible for purposes of impeachment. ECF No. 66 at 4:12-15.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, in order to analyze what a fact of consequence would be in this case, we must analyze the claims for relief Plaintiff pursues.

"A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution; standing is a 'core component' of that requirement." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992)). "To establish standing, a plaintiff must demonstrate (1) a concrete and particularized injury that is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's challenged conduct; and (3) a likelihood that a favorable decision will redress that injury." *Nat'l Family Farm Coalition v. EPA*, 966 F.3d 893, 908 (9th Cir. 2020) (quoting *Pyramid Lake Paiute Tribe of Indians v. Nev., Dep't of Wildlife*, 724 F.3d 1181, 1187 (9th Cir. 2013))."

The evidence relevant to the standing inquiry consists of "the facts as they existed at the time the plaintiff filed the complaint." *D'Lil*, 538 F.3d at 1036 (citing *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir.2007)). In ADA cases, the second prong of standing, or the "injury in fact" requirement, requires the court to determine whether the plaintiff "demonstrated that [his or] her injury was 'actual or imminent' at the time that [he or] she filed [is or] her complaint." *Id.* (citing *Lujan*, 504 U.S. at 560). An ADA plaintiff seeking injunctive relief must satisfy this requirement by demonstrating the plaintiff has "a sufficient likelihood that he will again be wrong in a similar way" by establishing "a real and immediate threat of repeated injury." *Fortyune v. American Multi–Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir.2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) and *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Both Plaintiff and Defendant cite to *D'Lil v. Best W. Encina Lodge & Suites* as instructive on the relation of an ADA plaintiff's litigation history to standing, and the Court agrees that *D'Lil* merits careful consideration. 538 F.3d at 1035. In *D'Lil*, the plaintiff was a paraplegic who, like Plaintiff, required the use of a wheelchair for mobility. *Id.* at 1033. The plaintiff worked as an "accessibility consultant," meaning that she contracted "with private attorneys and local governments to evaluate properties for barriers to disabled access." *D'Lil*, 538 F.3d at 1034, n. 1. She "traveled from her home in Sacramento to Santa Barbara, California in order to conduct a property inspection for [an] attorney" and encountered numerous barriers to access. *Id.* at 1034.

After her trip, she filed suit against the defendant hotel, "seeking injunctive relief under Title III of the ADA, injunctive relief and damages under California civil rights laws, as well as attorney's fees, litigation expenses, and costs." *Id.* "After three years of litigation, the parties entered into a consent decree that settled all issues related to injunctive relief and damages" but reserved "[t]he issue of attorney's fees, litigation expenses, and costs . . . for future resolution." *Id.* When the plaintiff filed her motion for attorney's fees, the district court, *sua sponte*, expressed concern over whether the plaintiff had standing to sue and asked the parties to brief the issue. *Id.*

On appeal, the Ninth Circuit reversed the district court's finding that the plaintiff lacked standing. *D'Lil*, 538 F.3d at 1041. First, the court noted that "[f]ederal courts are *required* sua sponte to examine jurisdictional issues such as standing." *Id.* at 1035 (citing *Bernhardt v. County of Los Angeles,* 279 F.3d 862, 868 (9th Cir. 2001) (internal quotations omitted). In the context of suits for injunctive relief filed pursuant to the ADA, a plaintiff establishes the "actual or imminent" injury requirement for standing by showing an 'intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *Id.* at 1037. The court reviewed evidence in the record that the plaintiff had given "detailed reasons as to why she would prefer to stay at the Best Western Encina during her regular visits to Santa Barbara" and "testified to three upcoming trips that she was planning to the Santa Barbra area." *Id.* at 1038. As a result, the Ninth Circuit concluded that the district court erred in finding that the plaintiff had "failed to provide evidence of her intent to return at the time that she filed suit." *Id.* at 1039. Thus, the court held that the plaintiff had "established that she suffered an 'actual or imminent' injury sufficient to confer standing." *Id.*

Notably, in *D'Lil*, "the district court explicitly declined to decide the credibility issue, relying instead on the ground that D'Lil did not introduce evidence of her intent to return in December 2002 to find that she lacked standing." *D'Lil*, 538 F.3d at 1039.

However, the Ninth Circuit noted that to the extent the district court's concerns about the plaintiff's credibility "might be viewed as an adverse credibility finding," the court rejected the legal reasoning on which that finding was based. *Id.* at 1039-40. It reasoned that "[t]he attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny." *Id.* at 1040. Ultimately, the court rejected the district court's credibility determination. *Id.* However, it did not reject the credibility determination because it is *per se* improper to consider litigation history. *Id.* Rather, the Ninth Circuit determined that the district court, in arriving at its credibility determination, had engaged in speculation, and the ultimate determination as to the plausibility of the plaintiff's intent to return was undermined by evidence that the plaintiff did, in fact, travel frequently throughout the state. *Id.*

In the *D'Lil* court's discussion of the considerations courts should bear in mind when deciding to consider past litigation history in ADA cases, it relied on the case of *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007). In *Molski*, the Ninth Circuit affirmed the district court's decision to enter pre-filing orders against the plaintiff and his lawfirm, stating that it could not "say that the district court abused its discretion in declaring Molski a vexatious litigant and in imposing a pre-filing order against him." 500 F.3d at 1050, 1062. The *Molski* plaintiff was paralyzed from the chest down, required a wheelchair, and had filed more than 400 lawsuits within the federal courts in California. *Id.* at 1050. He filed suit against the defendants, who promptly filed a motion to have the plaintiff declared a vexatious litigant, which the district court granted, after considering the plaintiff's litigation history. *Id.* at 1051. The Ninth Circuit, in reviewing the district court's consideration of the plaintiff's litigation history, reiterated why courts need to exercise caution when considering litigation history:

> We recognize that the unavailability of damages reduces or removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit under the

> ADA. As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. District courts should not condemn such serial litigation as vexatious as a matter of course. For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA. But as important as this goal is to disabled individuals and to the public, serial litigation can become vexatious when, as here, a large number of nearly-identical complaints contain factual allegations that are contrived, exaggerated, and defy common sense. False or grossly exaggerated claims of injury, especially when made with the intent to coerce settlement, are at odds with our system of justice, and Molski's history of litigation warrants the need for a pre-filing review of his claims.

*Molski*, 500 F.3d at 1062 (citing Samuel R. Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation,* 54 U.C.L.A. L.Rev. 1, 5 (2006); *De Long v. Hennessey*, 912 F.2d 1144, 1148, n. 3 (9th Cir. 1990)).

When considering the aforementioned cases, Plaintiff's argument that "[t]he law is clear that Mr. Langer's litigation history is of no relevance to the outcome of the action," ECF No. 65-1 at 5:25-26, is clearly incorrect. Courts have considered litigation history, such as in *Molski*, but must do so with caution. Defendants, on the other hand, correctly note that "[c]ourts have regularly raised credibility issues in ADA litigation involving serial plaintiffs." ECF No. 66 at 9:15-18 (citing *Harris v. Stonecrest Care Auto Center, LLC*, 472 F.Supp.2d 1208, 1213 (S.D. Cal. 2007)). For instance, in another case before this district court, *Harris v. Stonecrest Care Auto Center, LLC*, the plaintiff, like Mr. Langer, was disabled and had difficulty walking, requiring braces or a wheelchair and filed suit alleging he encountered a number of barriers while at a Shell gas station. *Harris*, 472 F.Supp.2d at 1210. The plaintiff also pursued claims under the ADA and Unruh Act and tried the case before the Court without a jury. *Id.* At the close of the plaintiff's case, the defendants moved for judgment as a matter of law, contending that

"Plaintiff lacked Article III standing to bring his federal claims." *Id.* In the Court's findings of fact and conclusions of law after the trial, the Court found the plaintiff's testimony to be unreliable. *Id.* at 1212. In doing so, it acknowledged the right of litigants to file ADA lawsuits to remedy denial of access violations but noted that "the reality is he has sued so many different establishments that it is impossible to believe that he routinely visits the same establishments on each of his visits to San Diego." *Id.* at 1213. The *Harris* opinion explicitly referred to the relevance of multiple lawsuits and rise of "legal shakedown sheme[s]." *Id.* at 1215. In order to deal with the high-volume of ADA cases, "[f]ederal courts must be diligent in observing standing requirements." *Id.* at 1215 (citing *B.C. v. Plumas Unified School Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (holding that federal courts are required to examine jurisdictional issues such as standing, even *sua sponte*, if necessary). Ultimately, the court held that "because, as of the date of filing, Mr. Harris was not likely to return to the Shell station, he lacks standing to bring a Title III claim." *Id.* at 1217.

The *Harris* court also acknowledged the "apparently contrary dicta regarding the relevance of the plaintiff's motivation for visiting a business facility only for the purpose of initiating an ADA lawsuit." *Id.* at 1217. However, it determined that the cases[2] which ruled that a plaintiff had standing even if he or she visited a facility for the purpose of locating barriers to create pretext for litigation were distinguishable because those cases decided a motion to dismiss. Because at the pleading stage, courts assume the truth of a plaintiff's allegations, and therefore, must assume the plaintiff intends to return if he makes that allegation, those cases were distinguishable. *Harris*, 472 F.Supp.2d at 1218.

---

2   *See, e.g.*, *Organization for Advancement of Minorities with Disabilities v. Brick Oven Restaurant*, 406 F.Supp.2d 1120 (S.D. Cal. 2005) (opining that the plaintiff's standing requirement in the ADA case would be met even if he visited the business solely for the purpose of determining whether barriers exist so he could file suit); *Molski v. Arby's Huntington Beach*, 359 F.Supp.2d 938, 941 (C.D. Cal. 2005) (*Arby's*) (observing, in dicta, that "[i]t simply does not matter, from a jurisdictional and standing point of view, what [a plaintiff's] motivation was for visiting [a business establishment]").

However, "the motivation behind a plaintiff's visit to a defendant business establishment may inform the question of redressability (an element of standing) and therefore takes on greater significance at later stages in litigation." *Id.* Accordingly, "[a] plaintiff who visits a local business solely in order to bring a Title III claim (to which supplemental state claims may be joined) fails to meet the redressability requirement for Article III standing." *Harris*, 472 F.Supp.2d at 1219 This is because if litigation is the sole purpose for a plaintiff's visit to a particular business, "once litigation is complete it is unlikely such a plaintiff will return to avail himself of the business' goods or services, or to visit the local business for any other reason." *Id.* at 1219. Hence, "[a]ny permanent injunction obtained in the course of litigation might benefit others, but it would not benefit the plaintiff." *Id.* On the other hand, "where a plaintiff's interests in patronizing or visiting the establishment extend beyond the end of litigation, injunctive relief may redress the plaintiff's injury." *Id.*

The *Harris* court held "that an individual plaintiff's contact with a local establishment made solely for the purpose of bringing a claim under Title III of the ADA, without more, is insufficient to confer Article III standing to seek injunctive relief." *Harris*, 472 F.Supp.2d at 1219-20 ("Because the Court finds Mr. Harris visited the Shell station solely for the purpose of bringing a Title III claim and supplemental state claims, any injunctive relief it might grant would not satisfy the redressability requirement for standing") (citing *Lujan*, 504 U.S. at 561). Given the Court concluded that the plaintiff lacked Article III standing to pursue claims under Title III of the ADA, the Court lacked jurisdiction to hear the plaintiff's ADA claim and dismissed it *with prejudice. Id.* at 1220. With "[t]he federal claim having been dismissed for want of jurisdiction," the Court could not "exercise supplemental jurisdiction to hear Mr. Harris' state law claims" and dismissed the state law claims *without prejudice. Harris*, 472 F.Supp.2d at 1220.

With the Ninth Circuit's precautionary considerations enumerated in *D'Lil* and *Molski* in mind, this Court examines the potential reasons for admitting some or all of

Plaintiff's lawsuits and weighs the probative value against any unfair prejudice that may arise due to the admission of such evidence. Admittedly, there is no disputing that Defendants cannot admit Plaintiff's previous lawsuits for the sole purpose of proving Plaintiff is a vexatious litigant. This is because evidence of a person's character, character trait, or specific acts is not admissible to prove that on a particular occasion, the person acted in accordance with that character or trait. FED. R. EVID. 404(a)-(b). Defendants do not dispute this, noting "prior lawsuits are inadmissible to show that the plaintiff is litigious." ECF No. 66 at 4:5-6. However, Defendants correctly argue "such evidence is admissible for other purposes, such as impeachment." *Id.* at 4:8-9 (emphasis omitted). "Evidence of a witness's character may be admitted under Rules 607, 608, and 609," which relate to impeachment. FED. R. EVID. 404(a)(3); *see also Outley v. City of New York*, 837 F.2d 587, 593 (2d Cir. 1988) (noting that "[i]mpeachment has been recognized as one of the 'other purposes' for which evidence of prior acts may be admissible"). Pursuant to Rule 607, "[a]ny party, including the party that called the witness, may attack the witness's credibility." FED. R. EVID. 607. On cross-examination, courts may permit inquiry into specific instances of a witness's conduct in order to attack the witness's character for truthfulness if they are probative of that witness's character for untruthfulness. FED. R. EVID. 608(a).

In this case, at Plaintiff's September 14, 2018 deposition, Plaintiff testified that he had filed 631 cases in the Central District, and although he did not live in the Los Angeles area at the time he filed those lawsuits, he intended to patronize those businesses again. ECF No. 66-1, Ex. A at 114:9-115:2-4. Nonetheless, Plaintiff also testified during his deposition that he could not remember what kind of businesses (e.g., bars, restaurants, etc.) he sued in Los Angeles. *Id.* To the extent Defendants seek to admit Plaintiff's litigation history for the purpose of showing that Plaintiff's testimony was not truthful—for instance, by showing that some of the business became accessible, but Plaintiff nonetheless, did not patronize them—such testimony would be admissible under Rules

404, 607, 608, and 609 of the Federal Rules of Evidence. However, Defendants cannot admit the lawsuits as evidence that Plaintiff fails to return to establishments as a general matter unless Plaintiff was asked at his deposition whether he returned to those establishments that he sued. That being said, Defendants argue that "Plaintiff's litigation history raises serious credibility questions about his professed intent to return." ECF No. 66 at 8:19-20. Defendants note that "[g]iven the high number of suits and identical allegations, it is highly implausible that Plaintiff sincerely intends to return to every place he sues." ECF No. 66 at 8:20-21. The court, *sua sponte*, takes judicial notice of the fact that Plaintiff has filed previous lawsuits in which he admits he never intended to return to the premises. *See, e.g., Langer v. Lapiz Properties Group*, United States District Court for the Southern District of California Case No. 3:20-cv-0664-BEN-MDD[3] (the "*Lapiz* Case").

Further, evidence of specific acts, like Plaintiff's previous lawsuits, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(B)(2). "Prior acts include prior lawsuits." *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008). The Court finds that Plaintiff's litigation history may feasibly be useful for other purposes under Rule 404. Plaintiff's arguments as to relevance fail to

---

[3] In this case, also before the Hon. Roger Benitez, the defendants moved to dismiss Plaintiff's case by arguing that res judicata bars his April 6, 2020 lawsuit because on May 29, 2013, Langer filed essentially the same lawsuit against the same defendants (in addition to a third defendant) in San Diego County Superior Court as Case No. 37-2013-00050784-CL-CR-CTL (the "2013 Action") based on the same alleged violations of the ADA and UCRA with respect to the same property. *Lapiz* Case, ECF No. 10-1 at 2:4-8. In response, Plaintiff argues res judicata does not preclude his new lawsuit because his ADA claim could not have been brought in the prior lawsuit as "Langer had no intention of returning to the . . . store and, therefore, had no standing to seek ADA injunctive relief." *Lapiz* Case, ECF No. 11 at 2:16-3:2; *but see* ECF No. 66-1, Ex. A, 116:13-17 (Plaintiff testified during his deposition in this case that with respect to the some 950 cases he filed in the federal courts, he alleged he intended to return in all of them).

warrant the Court excluding all evidence of litigation history at trial.

### 2. *The Probative Value of Plaintiff's Litigation History Outweighs Any Consumption of Time.*

Plaintiff also argues that his litigation history should not be admitted because any probative value is substantially outweighed by the consumption of time it will necessitate. ECF No. 65-1 at 4:18-20. Plaintiff argues that if he is "forced to defend the validity of his claims," it "would require Mr. Langer relitigate each of the cases raised by Defendants, to show that the claims were meritorious and negate any inference of impropriety." *Id.* at 4:23-26. "Given the volume of cases Mr. Langer has filed as an admitted serial litigator, his estimate for trial completion would have to be revised from the current short form to several weeks." *Id.* at 4:27-28-5:1. Defendants respond that "it is not necessary for Plaintiff to relitigate all of his prior cases to rebut the inference he is not being truthful." ECF No. 66 at 10:10-11. Rather, "Plaintiff can simply present evidence to show which of the premises he actually returned to." *Id.* at 10:12.

First, the Court concludes that the burden of any consumption of time spent admitting evidence of Plaintiff's litigation history does not substantially outweigh the probative value of such evidence. In fact, any consumption of time could be minimized through party cooperation by agreeing to a stipulation on certain issues. However, if the parties are unable to agree on this, Defendants can, through careful pre-trial preparation, select the most important cases about which they would like to cross-examine Plaintiff to minimize the consumption of time. Nevertheless, the Court feels the probative value of such evidence warrants the time it may take to question Plaintiff regarding the issue.

### 3. *The Probative Value of Plaintiff's Litigation History Is Not Substantially Outweighed by the Probability of Undue Prejudice.*

Next, Plaintiff contends that his litigation history should not be admitted because any probative value is substantially outweighed by the probability of undue prejudice. ECF No. 65-1 at 5:5-8. Defendant responds that evidence of Plaintiff's prior litigation

history is not unduly prejudicial and appropriate on cross-examination. ECF No. 66 at 8:25-26.

The Court acknowledges that admission of previous lawsuits has some prejudicial value by establishing that Plaintiff has filed over one thousand other lawsuits, which may cause the trier of fact to unfairly discount the present case based on a bias against litigious plaintiffs. However, on the whole, the Court finds the probative value of the other lawsuits, especially, but not limited to the Central District lawsuits, is outweighed by the risk of prejudice. As such, provided Defendants lay proper foundation for their admission at trial, these lawsuits should be admissible. In particular, the Court would find highly relevant whether any of Plaintiff's lawsuits allege that Plaintiff visited other establishments on the same day that Plaintiff alleges he visited the Smoke Shop and Lobster Shop. Plaintiff admits that his counsel's private investigator, rather than Plaintiff himself, entered the shops to measure the aisles and counters. ECF No. 24-1 at 4:6-18. While the ADA does not require efforts in futility to vest a plaintiff with standing, *see, e.g.*, *Civil Rights Educ. and Enforcement Ctr. v. Hospitality Props. Tr.*, 867 F.3d 1093, 1098–99 (9th Cir. 2017) ("[w]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury"); 42 U.S.C. § 12188(a)(1) (same), if Plaintiff never visited the Smoke Shop and Lobster Shop at all, this evidence would not only have high probative value, but it would also deprive Plaintiff of standing.

Further, to minimize any prejudice to Plaintiff, the Court cautions Defendants that argument at trial will be limited to the question of whether Plaintiff (1) intended to return to the establishments and/or (2) in fact visited the establishments and encountered the barriers in question. In admitting evidence pertaining to Plaintiff's litigation history for this limited purpose, the Court is cognizant of the Ninth Circuit's guidance in *D'Lil* that courts should exercise caution when arriving at credibility determinations based on a

plaintiff's previous ADA litigation history. 538 F.3d at 1034-35. Nonetheless, after careful consideration, the Court believes the probative value of such evidence outweighs any unfair prejudice or consumption of time, and that the prejudice to Defendants from excluding such evidence would be far greater than the prejudice to Plaintiff from admitting the evidence.

The Court finds that any prejudice to Plaintiff resulting from admitting his own litigation history does not substantially outweigh the probative value of such evidence—particularly given Plaintiff touts himself as a champion of the ADA. Given Plaintiff's self-proclaimed status as a tester, the Court finds it contradictory that he would now want to hide the very same status about which he boasts.

**B.** **Tester Standing Is Not at Issue.**

Plaintiff paradoxically argues that "argument regarding tester standing and evidence supporting it should be excluded because it is irrelevant and creates a substantial danger of undue prejudice," ECF No. 65-1 at 9:1-2, while later admitting in the same motion that intent to return, which relates tangentially to whether Plaintiff was a tester, "is certainly a fair issue to raise," *id.* at 9:4. Defendant responds by noting that "[t]he issue here is not whether Plaintiff is a serial ADA tester, but whether he misrepresented the purpose of his visit to the Shopping Center." ECF No. 66 at 9:18-19. The Court declines to address this issue given Defendant appears to not (1) dispute that testers may have standing, *id.* at 5:9-21, and (2) raise tester standing as an issue, *id.* at 9:18-19.

**C.** **The Sincerity of Plaintiff's Intent to Return is a Fact of Consequence Relevant to Plaintiff's Article III Standing in His ADA Case.**

Plaintiff argues that his litigation history is not an appropriate basis for questioning the sincerity of Plaintiff's intent to return. ECF No. 65-1 at 9:1-2. Defendant responds that "Plaintiff has placed the question of his intent to return squarely at issue." ECF No. 66 at 1:12. Thus, whether Plaintiff intends to return is "highly probative" of Plaintiff's credibility, and as such, merits any time it may take to cross-

-19-

Case #: 3:18-cv-00195-BEN-NLS

examine Plaintiff on that issue. *Id.* at 10:7-16. Again, Plaintiff notes in his motion that "intent to return is certainly a fair issue to raise," ECF No. 65-1 at 9:4. However, Plaintiff argues that Defendants must address this issue "without relying on Plaintiff's litigation history." *Id.* at 66-1 at 10:3-5. The Court disagrees, and as discussed in section IV(A)(1), finds that Plaintiff's intent to return is "squarely at issue" here and highly relevant to his standing in this lawsuit. The court also concludes that Plaintiff's previous litigation history may prove relevant to this issue. Thus, such evidence will not be excluded.

## V. CONCLUSION

For the above reasons, the Court **DENIES** Plaintiff's Motion in Limine No. 1 to Exclude Evidence of Plaintiff's Litigation History. Although the Court denies Plaintiff's Motion, the Court does not rule that such evidence is admissible. Defendants must still have to lay foundation and establish a basis for the admissibility of such evidence at trial. Further, Defendants may admit evidence of Plaintiff's litigation history solely for the purposes of impeachment and establishing standing. Such evidence is not admissible to show character (e.g., that Plaintiff has a character trait of litigiousness).

**IT IS SO ORDERED.**

DATED: September 30, 2020

HON. ROGER T. BENITEZ
United States District Judge

-20-

Case #: 3:18-cv-00195-BEN-NLS